The first case is De Jesus-Hall v. New York State Unified Court System. Let me just make sure counsel is still here. Mr. Wheeler, are you on the line? Yes, Judge, I am. All right, let me just, I can hear you, but I don't see you yet. There, I see you. Okay, great. And you can see me and the other panelists? Yes, I can. Great. All right. And Mr. Savitsky, I can see you as well. Can you hear me? I can, Your Honor. All right. So, you've got 10 minutes each, but Mr. Wheeler has reserved three minutes of rebuttal. So, we'll begin with you, Mr. Wheeler. The floor is yours. Thank you. May it please the Court, my name is Russell Wheeler. I represent Plaintiff Appellant Lorraine DeJesus-Hall. The District Court, in granting summary dismissal of this action, erred when it concluded that no adverse action existed with regard to either the discrimination or the retaliation claims. I would like to begin with the retaliation claim. Under this Court's jurisprudence, the standard for adverse action in a retaliation claim is an action harmful to the point where it could dissuade a reasonable employee from making or supporting a charge. It is not coterminous with the adverse action standard under a discrimination claim. It is an objective standard, however, context matters. It does require material adversity, but this Court has recognized it is not limited to terms and conditions of employment. The action considered by the District Court in this regard was plaintiff's involuntary transfer in July of 2015 from the criminal office of the Court to the foreclosure conference park. The District Court found no adverse action, in large part based on the absence of objective proof. There was only the plaintiff's subjective impression that this was a less preferable assignment. While no one told the plaintiff, as the Court observed, that this was a less preferable assignment, the plaintiff's job duties in the criminal back office were varied and significant. They included matters related to bail, appeals, and motions. But a criminal part is different than a civil part, right, Mr. Wheeler? So, I mean, if she had been transferred to a civil part, the same would have been true, right? Not necessarily, Your Honor. The foreclosure conference part was… I'm talking about comparing a civil part to a criminal part. You said the duties were different, but they're different from a civil part also, aren't they? The simple fact that they're different. Are they both within the classification in which she was classified by the Civil Service? Was she working out of class when she was in the foreclosure unit? She was working in a lesser title. I'm not sure what it was. Okay, so she wasn't… Does that appear in the record that she was working out of class? Well, there was no grievance filed, but the District Court did go down that road and analyze the title specs. Did it preclude her from… Didn't she on at least two or three occasions have opportunities in individual parts with judges? While working in the foreclosure conference part? Yeah, yeah. On a temporary basis? Well, she had kind of like trial runs, didn't she? Because ultimately the judges make the decision as to who they have in their part, don't they? Well, I don't think the record supports that. That's the claim of defendant. Well, the judges themselves said they made those decisions, didn't they, in the record? I'm sure your opposing counsel will tell me where, but you're sure that the record doesn't reflect that the ultimate decision as to whether someone is initially placed in someone's part was the clerk's decision, but as to whether they stayed within the judge's part, that was the judge's decision, wasn't it? That was. Okay. All right. So, didn't your client have at least three opportunities with individual judges she was placed in and each one of those opportunities the judge chose to have someone else stay on? During her tenure in the foreclosure conference part? Yeah. I believe there was one. Okay. Well, we'll check the number. But so, the foreclosure part wasn't a dead end in terms of her career, was it? Well, thankfully, it was not. Okay. What is she doing now? She is now in a park. So, it was not a dead end to her career? It was not a dead end to her career, but I would respectfully submit that that is not the standard for material disadvantage. Well, how do we understand then that it was some kind of lesser work or it was some kind of penalty? It didn't preclude her from advancing. She was paid exactly the same. The hours weren't different. The work may have been different, but she had a sense that it was less important maybe because she didn't like it. Back when I was a state court judge and I was in foreclosure part, I didn't particularly care for it either because it's just paperwork. But I don't understand how it was adverse to her. It didn't hurt her. She's now in an individual park. Again, the standard looks not to what ultimately happens with the employees' career opportunities, but looks at the time whether or not there was a material reduction. Well, that's why I asked you what makes it adverse. Did it cut off her career opportunities? Apparently, it didn't. Did it require longer hours? No, it didn't. Did it cause reduced pain? No, it didn't. What was it that was adverse? Just the fact that it was looked up on as lesser? She went from doing duties of a judicial character to working in a part that was not staffed by a judge, had no court staff, and that's significant because it deprived her of- Who signed the judgments of foreclosure? I'm sorry? I mean, it wasn't staffed by a judge because it was a paper trail. But ultimately, judges had to approve the work, didn't they? Presumably, they did. But if you go to the testimony of Lynn McKelvey, she described the foreclosure conference part as an intervention to avoid having to give that work to a judge. And I see I'm coming up on my unreserved time, and I'd ask the court's rebuttal time. Is that acceptable? Well, I'll let you get to a couple of points, but I want to just follow up on something Judge Wesley was asking with respect to adverse action on the retaliation claim. I mean, within a year of being put in the foreclosure part is when your client was first introduced to an in-part judge's chambers, right? Approximately a year. Yes, Judge. So, I mean, this could be viewed as a stepping stone, wouldn't it? I mean, she got civil experience in the foreclosure part that made her more attractive and more valuable as a potential clerk in part for a civil judge, no? I respectfully disagree. First of all, I believe that the appropriate time for this inquiry is the time of the action because what we're dealing with in a retaliation analysis is what would be likely to dissuade a similarly situated employee of reasonable firmness. That, I submit, is an analysis that should look at the circumstances at the time of the assignment. Again, I really want to look at the circumstances of the assignment and whether it really is a dead-end job. I don't think we're limited to looking at the evidence that existed at the time of the transfer. You think that's right? I think that if we are looking at what would dissuade an employee from making or joining a complaint, the circumstances at the time are significant. No, but the issue is whether there's anything in the record to suggest that this is a punishment or that someone would view this as a punishment. And if the record reflects that this is actually not that at all, it's a stepping stone to bigger and better things, that would be relevant, wouldn't it, to the court that's deciding this? If it were a stepping stone, but I don't think that the record supports that. And if I may just hit a couple of those points, there was a significant reduction in the responsibilities that she had. There's at least a fact issue as to what she was doing in the foreclosure conference part. My adversary, I'm sure, will characterize it as a more substantial role, but there is testimony from the plaintiff and from Mr. Addion, another clerk, senior court clerk, sent to that part that it is essentially a clerical function, that all that there is to do there is to calendar cases and to stuff envelopes of correspondence. The title specifications here are also very significant. And this is a point that the district court relied on, that there was no substantial, that this work was still within her title. But a distinguishing feature of the senior court clerk title involves supervision, whether it's supervision of court staff in a part or supervision of office staff in an office. And it is, I would say, it's even a settled fact here that there was no opportunity to supervise anybody. So anytime someone is given a job that doesn't include that, that's adverse? It is a distinguishing feature of the title. So the supervision is some kind of good aspect to the job? Well, we know that this court's case law has looked to the removal of supervisory responsibilities as an indicia of adverse action in the retaliation context. But can you just clarify for me, in her prior job in the criminal division, was she supervising people there? The record contains evidence that while she was there, the titles specified in the senior court clerk title specification were present in the criminal back office. In terms of testimony about actual supervision, I don't believe the record contains that. But the relevant titles were present there. May I? I'm sorry. Go ahead. I would just also note, let's come back to the idea that context matters. At the time that Ms. McKelvey reassigned plaintiff to the foreclosure conference part, Ms. McKelvey was aware by virtue of the 2015 Inspector General complaint, and as conceded by defendant in their Rule 56.1 statement, that the plaintiff had expressed her interest in an in-part assignment. And if we look at Ms. McKelvey's testimony about what the foreclosure conference part was designed to do, which was to relieve judges of having to do this work, and also the plaintiff's testimony and Mr. Addion's testimony about what actually happened there, a reasonable juror could conclude that this was several steps removed from a judicial type function. And therefore, the context that is important here is the plaintiff seeking to advance to an in-part assignment with the judge and all that goes along with that. This was a Ms. McKelvey knew it, and as is most important to this analysis, plaintiff knew it. And plaintiff was... I mean, we're way over. I did want to ask you one question about, you know, whether, what are the facts that would support an inference of retaliation? So even, so if we assume that this was an adverse action, what is the basis for concluding that this was retaliatory? The causal connection here is supplied by the timeline. Well, the timeline is that she got, she filed a complaint in January and she got transferred in July, late July. Correct. So that's more than six months. That's what you've got. Anything else? Well, this court, as others, has refused to draw a bright line. We can point to outlier cases as far as... I get that. I'm just asking, do you know anything else besides the six months? The fact that when Ms. McKelvey became aware that this complaint had been rejected as unfounded, she almost immediately moved forward with this transfer. A jury could look at that and decide that Ms. McKelvey waited cagely to make this move until she had been cleared in the complaint against which she was retaliating for plaintiff. All right. All right. Well, you've got three minutes to rebuttal. So we'll hear from Mr. Savitsky. Thank you. Thank you. Okay. Good morning. Thank you, Your Honor. Good morning, and may it please the court, Ari Savitsky from the State of New York for the Unified Court System. Mr. Hazershall failed to establish an actionable adverse employment action here for two reasons. Let me highlight two reasons that together resolve all the issues in this case. First, as the discrimination and the retaliation claims stemming from Mr. Hazershall's assignment as an in-part clerk in the foreclosure part, a reasonable jury simply could not conclude that the move from a back office support role to a role with more responsibility and more autonomy managing all aspects of the court's to the claims relating to the two judicial in-part assignments that the Hazershall gotten with Justices Slobot and Bartlett. No jury could conclude on this record that the assignments were based on Chief Clerk McKelvey's supposed animus, and that's most obviously the case because McKelvey wasn't the decision maker. The evidence conclusively shows, and intuitive sense as well, the judges of the court choose their own part clerks. There's and that's dispositive. So we think summary judgment should be affirmed. Now I'd like to address a few of the points made by co-counsel. Of course, as the court has said, the bar regarding retaliation versus discrimination is different in terms of establishing an adverse employment action. Here, a jury could not conclude that an employee might be dissuaded from making a complaint or discrimination based on the move to the foreclosure part. It doesn't make sense that McKelvey retaliated against the Hazershall's complaint about her not getting sufficient responsibility and autonomy by giving her an assignment with increased responsibility and autonomy in the foreclosure part. And let's be very clear about this. The Hazershall coordinated directly with the presiding officer, with all the litigants. She ran all operations of the cases. She ran the calendar, sent out notices, noted dispositions for the entire part. And this is reflected throughout the record in 23 to 64, 1254, 1258. Those are just some pieces of the deposition testimony. She ran the part. She supervised, quote, all aspects from one of her performance reviews of the parts management. And more disputed evidence establishes that the Justice Walsh, a new judge on the court, who McKelvey touted the Hazershall to Justice Walsh and touted her experience in the foreclosure part when she actually received a judicial part assignment only a year into her foreclosure part role. And of course, it didn't prevent her from interviewing for deputy clerk jobs, from taking the associate clerk exam, and from being put up for additional roles with other judges of the court, including Justice Bartlett, who someone else, and Surrogate and Offrey, who also had the option and chose someone else. So nothing here is sufficient for a jury to conclude that this moved towards her ultimate goal. And she was disappointed that she didn't achieve that goal sooner, to be sure. But nothing here would show that that progress towards removing it would dissuade an employee from making a legitimate complaint. Just to address briefly, my adversary discussed working out of title. There's nothing in the record to support that she was working out of title. In fact, the record shows that there were other senior court clerks who also staffed the foreclosure part, including Marcello Adiong and another person as well. And there was reference to Adiong's deposition testimony that the work in the foreclosure part was clerical. So was the back office. She came from the back office. So there's no diminution. I mean, even to credit this statement from Adiong in his deposition, there's no diminution in her role that makes it less prestigious or less clerical. And again, if anything, she had autonomy, responsibility, running a part of the court, a very busy one, important to the court's functions. There was mention of supervision and her supervisor responsibilities. But again, what the record is that as a back office clerk in a support role, the supervision that she had was when she temporarily subbed in in the judicial parts. And the record also shows that she continued to temporarily sub in the judicial parts when she was working in the foreclosure part. So there's no difference there, no diminution there in any of her responsibilities. Let me ask that question to make sure I understand it. So you're saying that in the criminal division where she was immediately before the foreclosure part, she did not have supervisory responsibilities? So what the record does reflect that that the back office clerks would, when necessary, temporarily sub in into a judicial to work in the judicial parts when someone was out, they needed someone to work in a judicial part. And once they were there and exercising those Other than the subbing, there's no supervision in the criminal division role that she had immediately before for the foreclosure part. There's nothing to reflect that. And the record reflects that she would work the intake window, pick up the phones, file papers, I mean, back office support work. That was the nature of the work that she was doing. And again, I think it's very fair to characterize it as a step up and a stepping stone. And certainly whether you can dispute whether it's a stepping stone or whether it was on the same level, but it was not a diminution. And that is the relevant question, whether it's a diminution, whether it's an impediment, whether it's something that would that would that would cause someone not to make a complaint in the retaliation context. And this wasn't a step back to her career. And again, I just just on the inference of retaliation point here and the retaliation claim, it's clear that the only basis from which to infer causality is just pure naked temporal proximity. Even taking taking my opponent's sort of suggestion that we should look at the May to July, the two month date, even two months for naked proximity is at the outer boundary of what's what's permissible in this context in the summary judgment stage. I mean, there's no statement, no other evidence to support this temporal proximity and affirming, especially here where the alleged adverse employment action is so weak and indeed legally insufficient. And that is our primary argument at that point. It's well within the spectrum of this court's decisions. So just you're finding that there's not there's not even a prima facie case. We don't get to step two. Absolutely. Absolutely. On retaliation, the the adverse employment action requirement is not met based on her transfer to the to the foreclosure conference part, which was an in part role that gave her increased autonomy, increased responsibility, increased experience and prepared her to take on a judicial part role, which she eventually did. But even if you were to conclude, sorry, Judge Wesley, go ahead. No, go ahead and finish your thought. Even if you were to conclude otherwise, there would it would there would still not be enough for a jury to conclude that the move to the foreclosure part was caused by some attempt to retaliate based on the complaint. At the time for a transfer to the foreclosure part, were there vacancies in any of the civil parts, the individual civil parts? The record does not reflect that there were any judicial part vacancies at the time. It certainly does reflect that. Go ahead. What? No, I apologize. That's the nature of Zoom. I apologize. Go ahead and finish. Just the record does reflect that there was a need in the in the judicial part that sort of came up, that there was the existing clerk needed to be taken out of there and there was a sort of immediate need to put someone in there. And was that for a newly elected judge or for a judge who had been been on the bench for a while? Do you mean the foreclosure part? No, no. Where the need arose where a clerk had to be taken out of an individual judicial part. Oh, I meant in the foreclosure part. There was an immediate need to make the transfer to the foreclosure part because the existing clerk there wasn't it wasn't working out. And so they needed a new clerk right away in the foreclosure part. Are you familiar with the affidavit submitted by she says there that with regard to judges that have been on the bench for a period of time, the determination as to who their part clerk is going to be is the judge's determination. Was that submitted by you or your colleagues? The affidavit was submitted, yes, by trial counsel. There is no question about that, is there? Well, I asked your opponent and he seemed to think that that was contested. That's why I'm Well, I don't think there's any contrary evidence in the record on that point. I mean, you have not only the district executive's affidavit, but you have the deposition testimony of Lynn McKelvey, the chief clerk. You have testimony from Justice Vasquez-Dolas and Supervising Judge Berry testified to that as Judge DeRosa, right? Correct. And in the supplemental joint appendix where you have the write-up from the complaints and where the MIG, the internal investigators, interviewed numerous judges and asked each of them. And so there's contemporaneous reflection of these three other judges who were all asked, how are the clerks chosen? And the judges all say, we choose our clerks. And conversely, I know that DeJesus-Hall, you know, puts in, you know, in her complaint that she thinks that McKelvey makes these decisions. But in her deposition, she was directly asked and she says, I have no idea. It's at 81 to 82 of the record, quote, no idea how these assignments are made. So there is simply all the facts are conclusive that the judges choose their own clerks. Okay. Thank you. All right. Thank you, Mr. Stavisky. We'll now hear back from Mr. Wheeler for three minutes of rebuttal. Thank you. Can I ask what evidence to the contrary as to whether the justices pick their clerks? Well, what the evidence shows in that regard is that there's no formalized written policy. That what the purported policy provides for is that a seasoned judge gets to make his or her decision. There's nothing in the record to establish at what point a judge transitions from being newly elected or appointed to a seasoned judge. Moreover, we know that what the judge's supposed authority to select their clerks is not absolute. It is to select among the available candidates that are put up by Lynn McKelvey. So by determining and administering this policy based on how long a judge has been on the bench to qualify as seasoned and to provide potential candidates for this selection, McKelvey at a minimum, supported by the record, contains a significant amount of control over this process. We also know that this was a process that was not in place in the courthouse prior to Ms. McKelvey's chief clerk. And in the affidavit of Antonia Shapiro, she notes that this is, to her knowledge, and she's worked in many, many different courts, that this is unique to this particular courthouse. So there are many questions. It wasn't unique to Monroe Supreme in 1987, I'll tell you that. But go ahead. Well, unfortunately, we don't have that information in the record. I understand, but you made a statement as if it were a system-wide matter. Go ahead. Well, wait, but the record does make clear that these judges on several occasions decided that they didn't like a particular clerk or they wanted to swap for a different clerk, right? That's correct. The record also reflects that Judge Vasquez-Doles expressed concerns about the clerks provided to her by Ms. McKelvey and was denied the opportunity to make a change. Just briefly on the notion that Ms. McKelvey enthusiastically touted the plaintiff's qualifications to Judge Bartlett, I believe, the judge to which she was assigned during the hearing admitted that that selection was based solely on availability and that she had to. So that informs Ms. McKelvey's supposed endorsement there. And the idea that there's no factual dispute about the difference in responsibilities between foreclosure conference and the criminal back office, that is not a settled fact. I can point to the plaintiff's deposition testimony. I can point to Mr. Addion's deposition testimony that makes it clear that, or from which a juror could find, she was not running the part. She was not coordinating with the attorney referee. And then finally, as to the supervision issue, I believe that my adversary is mistaken. If we look to the title specification, which is Joint Appendix 172, senior court clerks, this is from the distinguishing features, who work in court offices where they supervise court assistants and other court personnel engaged in processing prisoner correspondence, reviewing calendaring decisions, motions for sufficiency and preference, and orders for conformance with decisions. That is a distinguishing feature of the class, supervision, whether it's in a judge-staffed part or in a back office. This is something that a senior court clerk is expected to do. And there's no evidence in the record that Ms. DeJesus-Hall was permitted to exercise that function once she went to the foreclosure conference part. So that fact needs to be noted. All right. And unless the panel has any other questions, I'll yield whatever time I may have left. Oh, I don't think you've got any left. You've got more than your money's worth, Mr. Wheeler. But that's okay. We don't have a full calendar. And obviously, you've got a lot of questions, so we use the time as necessary. We will reserve decision. Nicely done, both of you. Nicely done. Well argued.